831 So.2d 1105 (2002)
Larry HARRIS
v.
MISSISSIPPI DEPARTMENT OF CORRECTIONS.
No. 2001-CC-01371-SCT.
Supreme Court of Mississippi.
November 21, 2002.
*1106 W. Ellis Pittman, Clarksdale, Wilbert Levon Johnson, attorneys for appellant.
Office of the Attorney General by Jane L. Mapp, Joseph A. Goff, attorneys for appellee.
Before SMITH, P.J., COBB and DIAZ, JJ.
SMITH, P.J., for the Court.
¶ 1. Captain Larry Harris ("Harris") filed a grievance on October 22, 1999, requesting that he be appointed and/or promoted to a permanent Correctional Administrator IV ("CA-IV") position or Deputy Warden with the Mississippi Department of Corrections ("MDOC"). He complained that he had been forced to work in the position of CA-IV for more than 485 days without receiving commensurate pay. He further requested back pay for the time he served in that capacity. His grievance was reviewed by his immediate supervisor, two superior levels of management, and ultimately by the superintendent. All relief sought by Harris was denied, and he appealed MDOC's decision to the Employee Appeals Board ("EAB").
¶ 2. On April 21, 2000, Harris presented his case before Judge Falton O. Mason, Jr., sitting as the EAB hearing officer. On June 19, 2000, Judge Mason entered an order granting Harris partial relief in the form of 10% special duty pay for 305 of the 485 days he served as an acting CA-IV. Harris requested a Full Board Review of Judge Mason's decision. The EAB entered an order on January 5, 2001, upholding the decision.
¶ 3. Harris then appealed to the Circuit Court of Sunflower County. Oral argument was heard in the circuit court on April 16, 2001. The circuit court entered an order on July 19, 2001, finding that Harris had not filed his grievance within the time period allowed by the Mississippi State Employee Handbook and that he was not entitled to a promotion or transfer to a CA-IV position. The circuit court, however, affirmed the EAB order and the special duty pay award to which it found Harris was entitled. Aggrieved, Harris appeals to this Court.

FACTS
¶ 4. MDOC hired Harris in 1976. He advanced to the position of Captain in 1985 and continues in this role to the present day. This complaint arises from a pseudo-promotion of Harris to the post of acting CA-IV. In 1998, Robert Armstrong ("Armstrong"), at the time serving as Warden of Area 4, Unit 32, asked Harris to serve as acting CA-IV. Harris characterized this as a demand, and not a request. Regardless of whether it was a request or a demand, Harris accepted the proposal. Armstrong penned a written request for this placement and sent it to Walter Booker ("Booker"), the Superintendent, on May 1, 1998. Booker approved the request on May 2, 1998.
¶ 5. Harris served as acting CA-IV for 485 days. In September of 1999, Booker *1107 appointed a new warden and deputy warden for Unit 32, W.L. Holeman and J.J. Streeter respectively. Also in September, Harris was relieved from his assignment as an acting CA-IV, and moved to another area. Harris filed a grievance on October 22, 1999, asserting that he had not been paid for the time he served as acting CA-IV, and requesting that he be appointed to either the CA-IV position or a Deputy Warden position. Failing to achieve complete relief, Harris now appeals to this Court.

STANDARD OF REVIEW
¶ 6. When considering the decision of a board or agency, the standard of review is not de novo, rather, this Court (and any reviewing court) determines whether "the Board's decision was (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the powers of the Board to make, or (4) violative of a statutory or constitutional right of [the complaining party]." Rowzee v. Pub. Employees' Ret. Sys., 777 So.2d 664, 666-67 (Miss.2000) (citing Sprouse v. Miss. Employment Sec. Comm'n, 639 So.2d 901, 902 (Miss.1994)).

DISCUSSION
¶ 7. Harris asks us to find that MDOC's agency only non-competitive promotions violated his rights and those of others similarly situated, that the decision below is against the overwhelming weight of the evidence and that MDOC should promote him with all back pay, benefits, and seniority, as well as paying reasonable attorney's fees. In making this request for relief, Harris alleges three errors. First, he argues that MDOC violated the written guidelines of the State Personnel Board ("SPB") in reviewing his grievance. Second, Harris contends that MDOC's use of non-competitive promotions violates the SPB's policies and Mississippi law. Finally, he alleges that he is entitled to back pay for the full 485 days he served as acting CA-IV, and not just for the 305 days he was awarded below.

I. WHETHER THE HEARING OFFICER'S UPHOLDING OF MDOC'S DECISION IN RESPONSE TO HARRIS'S GRIEVANCE RENDERS THE SPB GRIEVANCE PROCEDURE A SHAM DUE TO MDOC'S BLATANT VIOLATIONS OF THE SPB'S WRITTEN GUIDELINES FOR RESPONDING TO AN EMPLOYEE GRIEVANCE.
¶ 8. Four levels of review occurred prior to Harris's hearing before an EAB hearing officer. The deputy warden and warden, the first and second reviewers of Harris's grievance, both stated that
I have been recently appointed to this Area. I did not assign you to the Acting CA-IV position you presently have. I did not serve on the Promotion Board Committee. Therefore, I have no authority over any found promotions.
Superintendent Booker sat as the next reviewer, and stated
The Relief you seek is denied. There have [sic] been no violations of policies. There was no CAIV Pin permanently assigned to Area IV, [sic] when Warden Armstrong requested that you be allowed to act in the capacity of a CAIV. You and Warden Armstrong knew that no pay was involved in this informal transaction and that the transaction would not guarantee a promotion. This would have constituted pre-selection.
The Agency decision supplied by Commissioner Anderson simply stated, "I concur with Superintendent Booker. Relief sought is denied."
*1108 ¶ 9. Harris states that the SPB guidelines require Step II and III supervisors to conduct an investigation of the grievance and meet with the aggrieved employee within three days of receiving the grievance. He contends that the response to his grievance by four levels of his supervisors was perfunctory and that no one ever met with him regarding his grievance. Thus, Harris argues that MDOC's decision was flawed. Apparently, Harris believes that the flawed grievance process so tainted the later decisions by the EAB hearing officer, the full EAB, and the circuit court that we should reverse. Harris cites no authority for the relief he is seeking under this allegation of error.
¶ 10. MDOC does not attempt to contradict Harris's allegation that no investigation or interview occurred during the grievance reviews; rather, it asserts that even if MDOC did not follow the proper procedures, the full hearing provided before the Hearing Officer cured any deficiency that occurred. MDOC cites a Court of Appeals case in support of this argument. The Court of Appeals stated that once an "inquiry has been made under conditions that afford the employee ample opportunity to refute the truth of those charges, any previous proceedings at which similar factual determinations were made under conditions deemed unfair to the employee become moot." Miss. State Dep't of Health v. Hogue, 801 So.2d 794, 797 (Miss.Ct.App.2001). Hogue is not precisely on point with this case as it deals with an agency's decision to suspend an employee without pay. The agency appealed to the Supreme Court because the EAB reversed its action due to what the hearing officer referred to as due process violations during the earlier hearing. However, the statement cited above is a general principle of law, which the Court of Appeals lists and then concludes that "[t]hus, even were we to agree with the Appeals Board that Hogue was denied fundamental due process in the manner she was disciplined by the Department of Health, it would not warrant the relief afforded by the Board." Id.
¶ 11. The EAB hearing before Judge Mason allowed Harris to put forth his own witnesses, cross-examine any witnesses put forth by MDOC, and to make his arguments before a judge. This de novo hearing cured any deficiencies that may have occurred in the lower levels of the grievance review process. Thus, we find no merit in this allegation of error.

II. WHETHER MDOC THROUGH THE USE OF NON-COMPETITIVE PROMOTIONS HAS DENIED HARRIS AND OTHERS SIMILARLY SITUATED AN EQUAL OPPORTUNITY FOR APPOINTMENT AND PROMOTION IN STATE SERVICE IN VIOLATION OF SPB POLICIES AND MISSISSIPPI LAW.
¶ 12. Harris cites Mississippi statutes and this Court's own case law in support of this allegation of error, however, there is no merit to Harris's argument. The Mississippi State Employment Handbook details the promotion process once a state position becomes open, as follows:

PROMOTIONS
A promotion is the movement of an employee from a position in one job class to a vacant position in a job class with more responsible duties and a higher salary range.
Permanent state service status employees, probationary state service, part-time, time limited and/or other State Personnel Board purview non-state service employees who have been continuously employed for six (6) months may apply for a position in the State Personnel *1109 Board's inventory of job classifications, even if the position is not on recruitment.
Promotions to vacant positions may be made in one (1) of three (3) ways. Any of the following options may be utilized based upon agency needs at the time the promotion is implemented:
A. State Service Open-Competitive Promotion...
B. Agency-Only Competitive Promotion...
C. Agency-Only Non Competitive Promotion-Only current agency employees in state service positions are considered with this type of promotion. Advertisement is not required. The employee is required to complete an Experience and Training Record. The Experience and Training Record is submitted to the State Personnel Board for approval. The State Personnel Board ensures that the employee meets the minimum training and experience requirements for the promotional job class and that the employee has passed any required examination.
Miss. State Employment Handbook, § 4, at 11. (http://msonline.state.ms.us/SPB/EMP HDB/ Spbhb.pdf).
¶ 13. Harris's complaint centers on the deputy warden and warden slots filled by Booker in September of 1999. He alleges that Booker's appointment of the two men in these positions denied him, and others similarly situated, an equal opportunity for promotion. He also argues that the method utilized in filling the two slots violates Mississippi law. He cites two recent cases from this Court in support of this proposition, Tillmon v. Mississippi State Dep't of Health, 749 So.2d 1017 (Miss.1999) and Mississippi Employment Security Comm'n v. Culbertson, 2002 WL 244841 (Miss. Feb.21, 2002) (pending on motion for rehearing). He also cites a statute which states in part that one of the purposes behind creating an SPB is "to build a career service in government which will attract, select and retain the best persons, with incentives in the form of equal opportunities for initial appointment and promotions in the state service." Miss.Code Ann. § 25-9-101 (1999).
¶ 14. MDOC asserts that Harris is barred from complaining about these two promotions, and alternatively that his complaint is without merit. Neither the EAB hearing officer, nor the full EAB, addressed this issue. The circuit court, however, addressed the issue and agreed with MDOC finding that Harris was procedurally barred from complaining about these two promotions. The Mississippi State Employee Handbook states that "[a]n employee who has a grievable complaint arising from an action or inaction subject to the control of management must identify the grievance orally or in writing with his or her immediate supervisor within seven (7) working days of becoming aware of the cause of the complaint." Miss. State Employee Handbook, § 10, at 70 (http://msonline.state.ms.us/SPB/EMPHDB/ Spbhb.pdf). The circuit court summarized the pertinent dates as follows:
May 1, 1998 Written request to appoint Harris
 Acting Major
May 2, 1998 Superintendent Booker approved
 this request
September 13, 1999 New administrators announced
September 1999 Harris moved back to Captain
 position
October 22, 1999 Harris filed grievance
The circuit court then stated that Harris had failed to file his grievance in a timely manner. Harris stated in the hearing before Judge Mason that he became aware on October 22, 1999 (the same day he filed *1110 the grievance) that Holeman and Streeter were in permanent positions as warden and deputy warden and were not acting or temporary. There was no testimony to contradict Harris's statement other than statements that the announcement had been made in September.
¶ 15. The hearing officer and the full EAB did not expressly address this issue, rather they simply stated that all other relief beyond the back pay was denied. Thus, it is unclear why they denied any relief based on this claim. The circuit court, however, clearly found the issue to be time barred. This finding by the circuit court without an express ruling from the EAB hearing officer or the full board is subject to de novo review as a question of law, rather than being subject to the lesser standard of review regularly applied to an agency's decision. Thus, based strictly on the testimony Harris's complaint was not time barred.
¶ 16. As for Tillmon and Culbertson, MDOC argues that they may be differentiated from the case at bar because the positions at issue were advertised as competitive spots, whereas in the present case the positions were "Agency-Only Non-Competitive Promotions." This is true. Both of those cases dealt with "Agency-Only-Competitive-Promotions." Thus, unless we wish to find the regulation allowing "Agency Only Non Competitive Promotions" to be violative of Mississippi law, MDOC followed the regulations and did not violate the law. Thus, we affirm the decision reached by the EAB hearing officer that was additionally affirmed by both the full board and the circuit court.

III. WHETHER AN AWARD FOR TEN PERCENT BACK-PAY FOR ONLY 305 DAYS VIOLATES HARRIS'S RIGHT TO EQUAL PAY FOR THE ADDITIONAL 180 DAYS THAT HE SERVED IN THE CAPACITY OF ACTING CA-IV.
¶ 17. Section 5.06 of the Mississippi State Personnel Board Policy and Procedures Manual addresses the issue of special duty assignments and pay in pertinent part as follows:
When the services of an employee are temporarily needed in a position within the employing agency other than the position to which regularly assigned, the employee may be required, at the discretion of the appointing authority, to perform the tasks of such a position for a period not to exceed 180 days without a change in position title or employee status.
...
B. When an employee is assigned the duties of a position that is in an equal or higher pay range, a temporary salary award up to ten percent (10%) above the current salary may be awarded when justified and approved by the State Personnel Director. The position to which the employee is being detailed must be vacant or filled by an incumbent who is not available for duty due to an authorized leave.
C. Employees being detailed to vacant positions shall be limited to 180 days. In unusual circumstances, a detail beyond 180 days may be authorized by the State Personnel Director upon written request by the appointing authority.
Miss. State Personnel Board Policy & Procedures Manual, § 5.06, at 35-36 (http://msonline.state.ms.us/SPBPP/ SPBPMCh5.pdf).
¶ 18. The hearing officer, the full board, and the circuit court all found that MDOC had violated SPB policy by leaving Harris in the acting CA-IV spot beyond the 180 days. Thus, it granted him the 10% back *1111 pay for those days beyond the 180-day mark. There is no authority to require special duty pay within the first 180 days as the policy manual clearly contemplates that special duty pay is discretionary. Thus, following the agency's own rules, there was no error in failing to award Harris back pay for the first 180 days he served in the acting CA-IV position.

CONCLUSION
¶ 19. For the foregoing reasons, we affirm the judgment below.
¶ 20. AFFIRMED.
PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.